IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHARON JONES                                                                       PLAINTIFF

VS.                                                      CIVIL ACTION NO. 3:16-cv-165-FKB

CAROLYN W. COLVIN, COMMISSIONER                          DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Sharon Jones of the Commissioner of Social Security's final decision denying Jones's application for Supplemental Security Income ("SSI").  In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [8] regarding Jones's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Appellant's Motion for Summary Judgment [14] and supporting Memorandum Brief [15], Defendant's Brief in Opposition to Plaintiff's Memorandum Brief [20], and Plaintiff's Reply Brief [21].  The parties have consented to proceed before the undersigned United States Magistrate Judge, and the District Judge has entered an Order of Reference [10].  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the Commissioner's decision should be reversed and remanded for further consideration. Accordingly, Plaintiff's Motion for Summary Judgment [14] is granted in part and denied in part.

## I. PROCEDURAL HISTORY

Jones filed her application for SSI on March 23, 2012, and alleged a disability onset date of January 1, 2002, when she was thirty-five years of age. [8] at 93-94, 148-150.[1] The Social Security Administration denied a previous request for benefits in a decision issued on April 27, 2010. *Id.* at 82-91.

Jones, who completed about two years of college toward an Associate's degree, was born on October 20, 1966. *Id.* at 148. Although she formerly worked as a logistics driver and in a grocery store deli as a cake decorator, she has no relevant work history. *Id.* at 19, 36, 40, 164.

Jones alleges that she is disabled due to high blood pressure, asthma, chronic obstructive pulmonary disease ("COPD"),[2] arthritis, and bulging discs. *Id.* at 163. She was forty-seven years of age at the time of the ALJ's August 28, 2014, decision. *Id.* at 21. Her Initial Disability Report described her as being five feet, four inches tall and weighing two hundred forty-two pounds. *Id.* at 163.

The Social Security Administration denied Jones's application initially and upon reconsideration. *Id.* at 97, 101. Jones requested a hearing, which was held on April 17, 2014. *Id.* at 28. On August 28, 2014, the ALJ issued a decision finding that Jones was not disabled. *Id.* at 8-21. The Appeals Council denied her request for review on January 8, 2016, *id.* at 1, and this appeal followed.

---

[1] Citations reflect the original pagination of the administrative record. In addition, the Court notes that although Jones filed an application for Disability Insurance Benefits, the Commissioner apparently construed it as an application for SSI, as there is no separate application for SSI, and Plaintiff admits that she was not insured for disability insurance benefits purposes. [15] at 3 n.1.

[2] Pulmonologist records from August 2007 confirm a diagnosis of stage III sarcoidosis. *Id.* at 264.

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the ALJ provided a summary in her decision.  Nevertheless, a review of the observations and evaluations of certain examiners will aid in the consideration of this case. The records demonstrate that Jones sought regular treatment for her sarcoidosis from 2007 to 2012 from Ric Alexander, M.D.  *Id.* at 242-264.[3]  In July 2011, Dr. Alexander commented that Jones "has sarcoidosis, some mild asthma, she's overweight, [she has] a lot of pain problems but she's actually doing fairly well now."  *Id.* at 244.  As of January 30, 2012, Dr. Alexander's impression was that Jones had "some mild exacerbation" with a recent upper respiratory infection and "some bronchitis," but that her "sarcoid has been fairly stable."  *Id.* at 242.  He further commented that "[o]verall she has been feeling well."  *Id.*   During six examinations from May 2012 to November 2013, Dr. Alexander described her sarcoidosis as "inactive" and "stable."  *Id.*  at 462-469.

Records indicate that Jones sought regular mental health treatment at Weems Community Mental Health Center from January 2009 to February 2014.  *Id.* at 267-367, 473-495.  Despite being diagnosed with "Major Depressive Disorder, Recurrent, Severe," in February 2009, treatment notes indicate that her condition improved resulting from a course of consistent treatment sessions and drug therapy.  *Id.* at 367.  In September 2011, a social worker described Jones as "showing progress toward being med. compliant and basic physical needs."  *Id.* at 268.  Throughout 2012 and 2013, her treating mental health nurse practitioner, Madelyn Parker, commented that she was "doing well" with "no depression," *id.* at 475, 478, or she was "doing pretty good," *id.* at 485, 491.  During this period, Parker consistently assessed that Jones has "no

positive signs of psychosis or major affective disruption," "no neuroleptic effects," and "adequate insight and alliance." *Id.* at 475, 478, 480, 482, 485, 487, 489, 491, 494. In November 2013, Parker described Jones as "cheerful" and "talkative," and assessed Jones with a GAF of 66. *Id.* at 475. Jones exhibited depression and distraction in February 2014, but the nurse practitioner noted that Jones's son was in Afghanistan. *Id.* at 473. Nevertheless, the nurse practitioner still assessed Jones with a GAF of 66. *Id.*

Records from Azhar Pasha, M.D., demonstrate that Jones sought regular back pain treatment from him from 2012 to 2014. Id. at 549-611. In May 2012, the earliest visit in the record, Dr. Pasha described Jones as "an established patient" who came in for a "scheduled followup." *Id.* at 611. From 2012 to 2014, Dr. Pasha performed a series of spinal steroid injections, nerve blocks, and ablations to assist Jones with back pain management. Throughout this time period, she underwent both lumbar and cervical spine injections, with good results, for treatment of lumbar and cervical spondylosis without myelopathy, facet syndrome of the lumbar spine, lumbosacral radiculitis, and degenerative disc disease. At various times, Dr. Pasha diagnosed Jones with chronic pain syndrome and opioid dependence unspecified. *Id.* at 554, 557, 562, 565, 569, 573, 578, 581, 584-585, 589, 597, 599, 605, 609, 611. The most recent record is from April 1, 2014, when Dr. Pasha performed a bilateral L3 and L4 medial branch and a bilateral L5 dorsal ramus branch diagnostic block. *Id.* at 549. After the successful procedure, Dr. Pasha's diagnosis was "lumbar spondylosis without myelopathy . . .," "degenerative lumbar/lumbosacral intervertebral . . .," and "facet syndrome of back." *Id.* During the time period from 2012 to 2014, Dr. Pasha's records indicate that Jones's weight ranged from two

---

[3] Jones is also known as "Sharon Moore" in treatment records.

hundred forty pounds to two hundred seventy-six pounds. *Id.* at 551, 601.

On May 16, 2012, Dr. Pasha completed a "Medical Source Statement – Physical" that described Jones's impairments. *Id.* at 368. Dr. Pasha diagnosed Jones with "left leg ARA, Lumbar spondylosis," and stated that he did not expect Jones to improve. *Id.* He described Jones's symptoms as pain, fatigue, back and left leg pain. *Id.* He indicated that she could sit and stand/walk zero to two hours and sit three hours in an eight-hour work day. *Id.* at 369. He stated that she would need a job that permits shifting positions at will from sitting, standing, or walking. *Id.* He also stated that she could occasionally lift less than ten pounds, while she should rarely lift ten, twenty, and fifty pounds. *Id.* Dr. Pasha indicated that Jones could rarely twist, stoop, crouch/squat, climb ladders, and climb stairs, while noting she had no limitations with reaching, handling, or fingering. *Id.* He noted that her pain would constantly interfere with her attention and concentration, but that she would be capable of low stress jobs due to her severe anxiety. *Id.* at 370. Finally, Dr. Pasha concluded that Jones would be absent more than four days per month due to her impairments. *Id.*

### III. HEARING AND DECISION

In her August 28, 2014, decision, the ALJ evaluated Jones's impairments using the familiar sequential evaluation process[4] and found that she has the severe impairments of obesity,

---

[4] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

lumbar and cervical spondylosis, lumbosacral radiculitis, degenerative disc disease, arthritis, sarcoidosis with interstitial fibrosis, and asthma. *Id.* at 13. The ALJ found that Jones's hypertension and depression were non-severe. *Id.* The ALJ also considered the combined effect of these impairments and determined that they did not, singly or in combination, meet or medically equal the criteria for any listed impairment. *Id.* at 15. In reaching that conclusion, the ALJ determined that her respiratory conditions did not meet those of the Listings, and she specifically considered Jones's obesity in combination with her other impairments. *Id.* at 15-16.

After considering the record, the ALJ found that Jones has the residual functional capacity to "perform sedentary work as defined in 20 CFR 416.967(a) except with a consideration she should avoid even moderate exposure to pulmonary irritants." *Id.* at 16. Considering her alleged symptoms and limitations, the ALJ found that the evidence does not support a finding that Jones's pain, including headache, her symptoms of mental disorders and side effects of medication "would impose any appreciable limitation in [her] abilities to:

---

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

understand, carry out, and remember instructions; use judgment in making work-related decisions, respond appropriately to supervision, co-workers and work situations; or deal with changes in a routine work setting." *Id.* at 18.

Considering Jones's age, education, work experience, and residual functional capacity, the ALJ concluded that jobs exist in significant numbers in the national economy that Jones can perform. *Id.* at 19. After consulting with a vocational expert, the ALJ concluded that she would be able to perform the jobs of bench assembler (unskilled and sedentary), small parts assembler (unskilled and sedentary as performed in the national economy), and café food checker (unskilled and sedentary). *Id.* at 20. Alternatively, the ALJ determined that if her pain limited her ability to sustain concentration and attention to the point where she was limited to performing only simple, routine tasks, Jones still would not be disabled because she could still perform the jobs identified by the ALJ. *Id.* Thus, the ALJ found that Jones had not been disabled since March 23, 2012, the date of the application. *Id.*

## IV. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical

evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

## V. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence and should be reversed for the following three reasons:

1. The Commissioner failed to properly consider all of the medical impairments which affect Plaintiff's ability to work in determining her residual functional capacity.

2. The Commissioner failed to properly evaluate the medical opinion evidence of record.

3. The Commissioner failed to properly evaluate Plaintiff's credibility.

[15] at 2.

### A. Did the Commissioner fail to properly consider all of the medical impairments?

Jones argues that the ALJ failed to consider all of her vocationally significant impairments in determining her residual functional capacity. The ALJ found that she has the

severe impairments of obesity, lumbar and cervical spondylosis, lumbosacral radiculitis, degenerative disc disease, arthritis, sarcoidosis with interstitial fibrosis, and asthma. [8] at 13. Jones argues that the ALJ erred by failing to find that her chronic pain syndrome with opioid dependence, her depression, and her anxiety were "severe." Jones alleges that her history of treatment for chronic pain by Dr. Pasha and treatment at Weems Community Mental Health Center record evidence supporting the conclusion that these conditions are "severe." Furthermore, she argues that the vocational expert testified that someone who experiences pain that would frequently or constantly interfere with the attention or concentration needed to remain on task, such as she does, would be unable to perform any work that exists in the economy.

After reviewing the ALJ's decision and the medical evidence, the Court agrees with the Plaintiff in certain respects. Although the ALJ addressed Plaintiff's allegations of hypertension, depression, her respiratory conditions, including sarcoidosis, and obesity, she completely failed to discuss Jones's musculoskeletal limitations. While the ALJ found that Jones had the severe musculoskeletal impairments of lumbar and cervical spondylosis, lumbosacral radiculitis, and degenerative disc disease, she failed to address what effect, if any, these severe impairments had on Jones's ability to work. Absent any analysis of these musculoskeletal limitations, "the Court is simply unable to conduct an informed judicial review as to whether substantial evidence supports the ALJ's" decision. *Owens v. Colvin*, 2013 WL 5406991, *5 (S.D. Miss. Sept. 25, 2013). "Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, 'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). In reaching this

conclusion, the Court has not reweighed the evidence. Rather, the Court concludes that the record presented is insufficient to determine whether all of the evidence was considered in determining Jones's residual functional capacity. Accordingly, the case is remanded to the Commissioner for consideration of Jones's severe impairments of lumbar and cervical spondylosis, lumbosacral radiculitis, and degenerative disc disease and to address what effect, if any, these severe impairments had on Jones's ability to work.[5]

On the other hand, there is substantial evidence in the record supporting the ALJ's conclusion that Jones's allegations of anxiety and depression were not severe as measured by the "paragraph B" criteria of Listing 12.00C. As for her allegations of anxiety, there is no diagnosis of anxiety in the mental health records. While Dr. Pasha stated in his medical source statement that she suffered from anxiety, he is not a mental health specialist. Accordingly, there is a lack of substantial evidence of record supporting an allegation of anxiety as a severe impairment.

Turning to Jones's allegations of depression, the treatment notes showed consistent improvement over time through a course of in-person therapy and drug therapy. In November 2011, her treating mental health nurse practitioner, Madelyn Parker, noted that her mental status evaluation was normal and diagnosed her with "major depressive disorder, recurrent, in partial remission (primary)." [8] at 349. Parker commented throughout 2012 and 2013 that Jones was "doing well" with "no depression," *id.* at 475, 478, 480, or she was "doing pretty good." *Id.* at 485, 491. Contrary to her report of thoughts of suicide to the consultative examiner, Dr. Anthony Fouts, in June 2012, *id.* at 376, she made no such reports to her mental health nurse practitioner

---

[5] In addition, on remand the ALJ is directed to address whether Dr. Pasha's diagnosis of chronic pain syndrome constitutes a "severe" impairment.

during that time period. *Id.* at 494. Although she reported that she experienced some "sad times" in July 2013, she also confirmed on her July and November 2013 visits that she had no thoughts of self-harm. *Id.* at 475, 478. Considering this record evidence, the undersigned finds that substantial evidence supports the ALJ's conclusion that her depression was not severe.

Accordingly, for the reasons discussed *supra*, the Court remands this action for further consideration of Jones's musculoskeletal limitations.

### B. Did the ALJ give proper weight to the opinion of Jones's treating physican?

Plaintiff argues that the ALJ failed to accord proper weight to the opinion of Dr. Azhar Pasha, her treating pain management physician, and the medical source statement that he completed in May 2012. *Id.* at 368. Jones further argues that the ALJ failed to follow the guidance of *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), by not explicitly considering the factors set forth for SSI claims in 20 C.F.R. § 416.927.

The Fifth Circuit has held that generally, a treating physician's opinion as to the nature and severity of a claimant's impairment is to be given controlling weight if it is well-supported by objective medical evidence and not inconsistent with other substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 175-176 (5th Cir. 1995). However, an ALJ may give less weight, or even no weight, to a treating physician's opinion where there is good cause shown. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

A special rule applies where there is no opinion of a treating or examining physician that contradicts the opinion of a treating physician:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating

physician's views under the criteria set forth in [the relevant regulations.]

*Newton*, 209 F.3d at 453 (emphasis in original). The criteria set forth in 20 C.F.R. § 416.927 provide that the ALJ consider the following: (1) length of the relationship between the claimant and the treating physician, and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist; and (6) other factors which tend to support or contradict the opinion.

In this case, the ALJ's reason for rejecting Dr. Pasha's opinion in favor of that of a non-examining state agency medical consultant was the brief statement, without any evidentiary explanation or discussion, that Dr. Pasha's opinion was "not supported by his own clinical findings or the other evidence of record." [8] at 19. While an ALJ is not required to discuss "each factor in outline or other rigid, mechanical form," *Wiltz v. Commissioner*, 412 F. Supp. 2d 601, 608 (E. D. Tex. 2005), there is no evidence in the ALJ's written decision that any consideration was given to the length and nature of the relationship, the frequency with which Jones sought treatment from Dr. Pasha, or other factors which contradict Dr. Pasha's opinion. While there may be some inconsistencies between Dr. Pasha's clinical findings and his functional evaluation that may have been considered by the ALJ, the ALJ's failure to discuss the evidence leaves the Court unable to conduct "an informed judicial review as to whether substantial evidence supports the ALJ's" decision. *Owens*, 2013 WL 5406991 at *5. Because the ALJ gave greater weight to the opinion of a non-examining medical consultant than to Jones's treating physician, without addressing the factors of 20 C.F.R. § 416.927 as mandated by *Newton*, remand for consideration of these factors is required. In remanding this action to the

ALJ, the undersigned does not conclude that the ALJ should not have given only "minimal weight" to Dr. Pasha's opinion, but simply states that the ALJ was required by *Newton* to explain more fully her reasons for reaching that decision.

### C. Did the ALJ fail to properly evaluate Jones's credibility?

Plaintiff argues that the ALJ failed to properly assess her credibility with regard to her allegations of pain and symptoms. Because the Court has determined that remand for further consideration of the case is appropriate, it will not address the substance of this issue.

The Court observes that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled. *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). In evaluating credibility, the ALJ is not required to give claimant's subjective testimony precedence over conflicting medical evidence. *Anthony v. Sullivan*, 954 F.2d 284, 295 (5th Cir. 1992).

On remand, the Court directs the ALJ to reconsider Jones's credibility in light of Dr. Pasha's treatment and diagnoses. However, consistent with *Harrell,* the Court leaves the determination of the claimant's credibility to the sound discretion of the ALJ and makes no finding that the ALJ's credibility determination in her decision is not supported by substantial evidence.

### VI. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that Plaintiff's Motion for Summary Judgment [14] should be granted in part and denied in part, and that this matter should be remanded to the Commissioner for further consideration as set forth in this decision.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 6th day of September, 2017.

                                  /s/ F. Keith Ball
                              UNITED STATES MAGISTRATE JUDGE